## UNITED STATES DISTRICT COURT

## DISTRICT OF MAINE

| | |
|---|---|
| HEIDI A. TAITT AND G. PAUL TAITT, | ) |
| | ) |
| Plaintiffs | ) |
| | ) |
| v. | ) No. 2:25-cv-00008-LEW |
| | ) |
| SELECT PORTFOLIO SERVICING, INC., and U.S. NATIONAL ASSOCIATION, Individually and as Trustee for CIM Trust 2020-R3 Global Structured Finance – CIM Trust 2020-R3, | ) |
| | ) |
| Defendants | ) |

## <u>ORDER</u>

In this removed action, Plaintiffs Heidi and Paul Taitt contend that the Defendants, Select Portfolio Servicing, Inc., and U.S. Bank National Association, have engaged in "14 years of continuous and unlawful conduct" involving "fraudulent documentation, glaring discrepancies . . ., and deliberate misrepresentations about the ownership and enforceability" of a promissory note and mortgage. This conduct, Plaintiffs claim, has caused them "significant financial losses, irreparable harm to the[ir] title . . ., and substantial emotional distress including physical harm." Verified Compl. at 2 (ECF No. 1-1). Plaintiffs filed suit in State Court against Select Portfolio and U.S. Bank National Association based on their understanding that one of the Defendants claims to hold the

alleged promissory note and mortgage yet has repeatedly failed to demonstrate its chain of title to Plaintiffs' satisfaction and has instead relied on "fabricated, inconsistent, and incomplete documentation" to ground the supposed interest. *Id.* ¶ 79. Pointedly, "Plaintiffs dispute the validity of the alleged debt due to documented inconsistencies and irregularities in critical loan documents, including indorsements, allonges, and recorded assignments." *Id.* ¶ 7.

The matter is before the Court on Plaintiffs' Motion to Remand (ECF No. 14) and Motion for Leave to File an Amended Complaint (ECF No. 13), as well as Defendants' Motion to Dismiss (ECF No. 33) and Plaintiffs' responsive Motion to Strike the Motion to Dismiss (ECF No. 34). In addition, Plaintiffs seek to supplement both their Motion to Amend and their Motion to Strike (ECF Nos. 42, 45). Furthermore, Defendants have filed a Motion to Substitute (ECF No. 47), whereas Plaintiffs have filed a removal-related Motion for Sanctions (ECF No. 51). Plaintiffs have also filed a Motion for Judicial Notice (ECF No. 73).

**A.    Plaintiffs' Motion to Remand (ECF No. 14) and Motion for Leave to File Amended Complaint (ECF No. 13).**

In their Complaint, Plaintiffs allege in part that Defendants engaged in mail fraud and assert claims under both the federal frauds and swindles statute, 18 U.S.C. § 1341 (Count 2) and the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962, 1964 (Count 10). Plaintiffs' assertion of these federal claims against Defendants provided the Defendants with one sufficient justification to remove the Plaintiffs' case from state court, based on federal question jurisdiction. 28 U.S.C. § 1331.

In opposition to removal, Plaintiffs filed, in tandem, their Motion to Amend and Motion to Remand, through which they state their intention to drop from their Complaint "[a]ll references to federal claims, questions, statutes, and related relief, including but not limited to 18 U.S.C. § 1341 (mail fraud) and RICO." Mot. to Amend Ex. B at 2 ("Summary of Amendments to the Amended Complaint"). Plaintiffs also seek to add allegations concerning newly discovered evidence in support of their claims, as well as two new counts arising under state law.

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, the Motion to Amend, along with the supplement thereto (ECF No. 42) would ordinarily be in order for a grant. However, insofar as Plaintiffs primarily filed the Motion to Amend for the purpose of contesting removal, it is appropriate to address whether jurisdiction would continue based on diversity of citizenship even if the federal claims are abandoned. If federal jurisdiction exists regardless of the proposed voluntary dismissal of the federal claims, Plaintiffs, who proceed here without representation by counsel, may wish to reconsider their request for the dismissal of their federal claims. Furthermore, Plaintiffs have more recently indicated their intention to supplement the proposed amendments (ECF No. 42). Consequently, as of this date, the proposed amended complaint is not the amended complaint Plaintiffs evidently desire to proceed with. The Court has no interest in granting a motion to amend only to have Plaintiffs propose yet another version of their Complaint. It would be better to have Plaintiffs revise their Complaint and file it as an exhibit to a renewed motion to amend. When doing so, Plaintiffs may decide to retain the federal claims because the Court

will retain jurisdiction over the matter in any event, based on diversity jurisdiction, for reasons that follow.

Defendants' Notice of Removal cites diversity jurisdiction, 28 U.S.C. § 1332, as an independent basis for removal.  More particularly, Defendants state that their citizenship is diverse from Plaintiffs and that the amount in controversy exceeds $75,000.  Notice of Removal ¶¶ 7-8, 10-17.  In opposition, Plaintiffs assert, correctly, that Defendants removed the case based on both federal question and diversity jurisdiction, Mot. to Remand ¶ 2, but then assert, incorrectly, that dropping their federal claims would necessarily result in a remand.  Diversity jurisdiction is an independent basis for removal.  As to diversity jurisdiction, Plaintiffs maintain that Defendants have overstated the amount in controversy because Defendants reference the amount of the outstanding balance on the note, as though this were somehow improper.  I do not find it improper, however, because Plaintiffs state in their Complaint that they "dispute the validity of the alleged debt due to documented inconsistencies and irregularities in critical loan documents, including indorsements, allonges, and recorded assignments."  *Id.* ¶ 7.

Regardless of the arguable propriety of using the outstanding balance on the note to determine the amount in controversy, *cf. McKenna v. Wells Fargo Bank*, *N.A.*, 693 F.3d 207, 212 (1st Cir. 2012), from a review of the Motion to Remand, the Complaint, and the proposed amended complaint, it is clear that Plaintiffs seek to recover damages well in excess of $75,000.  *See*, *e.g.*, Complaint (ECF No. 1-1) at 106-107; Proposed Am. Compl. (ECF No. 13-1) at 101-102.  The requisite amount in controversy is readily established by the Plaintiffs' own pleadings.

4

Finally, Plaintiffs challenge the existence of diversity of citizenship by arguing that although a national association bank is a citizen of the state in which its main office is located, *see Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303, 318-19 (2006) (construing 28 U.S.C. § 1348), that rule does not apply here because U.S. Bank National Association acting as a trustee has the state-citizenship of every trust beneficiary. I conclude that this final challenge to removal is similarly ineffective. National association banks are federally chartered entities capable of suing and being sued in their own names. Plaintiffs sued U.S. Bank National Association both individually and as trustee. Individually, U.S. Bank National Association is a citizen of Ohio. The same is true when U.S. Bank National Association is sued for actions taken in its capacity as a trustee. *Americold Realty Tr. v. Conagra Foods, Inc.*, 577 U.S. 378, 383 (2016) ("[W]hen a trustee files a lawsuit or is sued in her own name, her citizenship is all that matters for diversity purposes." (citing *Navarro Savings Assn. v. Lee,* 446 U.S. 458, 462-66 (1980)); *see also Demarest v. HSBC Bank USA, N.A.*, 920 F.3d 1223, 1228-29 (9th Cir. 2019); *1900 Capital Tr. III By US Bank Tr. Nat'l Ass'n v. Sidelinger*, No. 2:19-cv-220-DBH, 2021 WL 864951, at *2-3 (D. Me. Mar. 8, 2021).

In summary, Plaintiffs' Motion to Remand is denied.[1] Plaintiffs' Motion to Amend would be granted but is instead denied given that the Court intends to provide Plaintiffs

---

[1] In the Motion to Remand, Plaintiffs also request miscellaneous relief such as "judicial clarification on foreclosure-related references." Mot. to Remand ¶ 14. They ask the Court to censor Defendants' references to foreclosure and foreclosure-related terminology because they maintain that it improperly shifts the focus away from the true nature of their claims. Plaintiffs have made it clear to the Court what the nature of their suit is. However, the Court is not going to require Defendants to refrain from alluding to foreclosure or foreclosure-related language. Both Plaintiffs and Defendants are entitled to characterize the factual background and advance legal arguments as they see fit, and the Court will strive to avoid any factual or

with leave to file a new motion to amend along with a new proposed amended complaint that includes more recent supplemental facts and, if Plaintiffs desire, keeps the federal claims in place.

## B.    Plaintiffs' Motions for Sanctions (ECF No. 51)

Plaintiffs request the imposition of sanctions due to the burden of what they believe amounted to wrongful removal, bad faith litigation, and abuse of process.  To the extent Plaintiffs base the Motion for Sanctions on wrongful removal, they are mistaken for the reasons discussed above.  Furthermore, to clarify a mistaken understanding that Plaintiffs repeat over and over again in their papers, Defendants had "standing" to remove the case because they were named as Defendants in Plaintiffs' Complaint.  They did not need to substantiate ahead of time that Plaintiffs had (ostensibly) sued the wrong party before exercising their right to remove the case to federal court.  Both Defendants are, in fact, proper parties for purposes of removal precisely because Plaintiffs made them parties by suing them.  Furthermore, there is nothing fraudulent in Defendants' Rule 7.1 disclosures since they are required by the Rule to provide them.  *See* Fed. R. Civ. P. 7.1(a)(2).[2]

The balance of Plaintiffs' Motion for Sanctions entails evidentiary matters that are more appropriately addressed in the context of merits litigation related to the validity of commercial paper and deed assignments, not in the context of pre-merits sanctions

---

legal error in its rulings.  Plaintiffs also suggest in their Motion to Remand that they believe that this Court's retention of jurisdiction means that they will not have access to the same relief available in state court.  *Id.* ¶ 6.  That is incorrect.  Plaintiffs can proceed in this Court with their state law claims through this Court's exercise of supplemental jurisdiction.  *See* 28 U.S.C. § 1367.

[2] More ink will be spilled on the identity of the proper defendant, in the context of discussing Defendants' Motion to Substitute.

litigation.  Furthermore, by suing the Defendants, Plaintiffs are not entitled to a stay against all future assignments.  Nor are they entitled to an immediate sanction award based on summary findings concerning disputed issues tied up in the merits contest.  If the Court identifies a fraud on the court, it can address it after making the finding, but not before.  Plaintiffs' contentions so far have not established any fraud conclusively.  Civil litigation begins with allegations, and even if the allegations are verified, a claimant is not entitled to immediate relief on his or her claims based on pleadings alone.

As for collections-related communications received by Plaintiffs after they had sent a cease-and-desist letter, Plaintiffs may amend their Complaint to assert a claim if they believe they have cause to do so notwithstanding Defendants' assertion that said communications were within the safe harbor and/or exempt.  *See* Defs' Opp'n at 2, 5-6 (ECF No. 57).

Finally, the record does not warrant sanctions based on the parties' unsuccessful judicial settlement conference.

## C. Defendants' Motion to Dismiss (ECF No. 33) and Plaintiffs' responsive Motions to Strike (ECF Nos. 34, 45)

Defendants argue that the Plaintiffs' claims are all subject to dismissal based on the statute of limitation and collateral estoppel.  Plaintiffs oppose the Motion but do so through a "Motion to Strike."  Motions to strike other parties' motions are not part of accepted motion practice in this District.  Such a motion is virtually unheard of.  While Rule 12(f) of the Federal Rules of Civil Procedure authorizes a motion to strike content from a

pleading, a motion is not a pleading. I summarily deny the Motions to Strike but will construe them as responses in opposition to Defendant's Motion to Dismiss.

For purposes of reviewing a motion to dismiss, I will accept as true Plaintiffs' allegations and will draw all reasonable inferences in their favor. Fed. R. Civ. P. 12(b)(6); *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012); *Sanchez v. Pereira–Castillo*, 590 F.3d 31, 41 (1st Cir. 2009). The allegations may also be informed by materials susceptible of judicial notice, of public record, or referenced and relied upon to support Plaintiffs' cause. *Newton Covenant Church v. Great Am. Ins. Co.*, 956 F.3d 32, 35 (1st Cir. 2020).

To avoid dismissal, Plaintiffs' Complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Rule 8 standard is informed by a plausibility standard. The short and plain statement must "plausibly narrate a claim for relief." *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012). Plausibility means "something more than merely possible," *id.*, or "merely consistent with a defendant's liability," *Ocasio–Hernández v. Fortuno-Burset*, 640 F.3d at 11 (1st Cir. 2011) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (en banc).

The burden is on Defendants to establish their affirmative defenses. *SBT Holdings, LLC v. Town of Westminster*, 547 F.3d 28, 36 (1st Cir. 2008). "As a general rule, a properly raised affirmative defense can be adjudicated on a motion to

dismiss so long as (i) the facts establishing the defense are definitively ascertainable from the complaint and the other allowable sources of information, and (ii) those facts suffice to establish the affirmative defense with certitude." *Rodi v. S. New Eng. Sch. of Law,* 389 F.3d 5, 12 (1st Cir.2004) (footnote omitted).

<u>Plaintiffs' claims</u>

Plaintiffs' current Complaint is a lengthy volume that recounts, in the main, the history and travels of a promissory note and related mortgage deed. But principally, Plaintiffs say that they base their claims on events "<u>involving and stemming from</u> the foreclosure action initiated by American Bank in October 2010." Compl. introduction, p.4 (emphasis in original). They allege that the files maintained by Defendants do not and cannot establish "<u>any valid indorsement or assignment to U.S. Bank or any trust it</u> <u>manages</u>." *Id.* ¶ 5 (emphasis in original). Similarly, "Plaintiffs contend that discrepancies and irregularities in the chain of title and supporting documentation remain unresolved, contributing to [their] claims." *Id.* They seek to refute through this case "the legitimacy of Defendants' claims and authority to enforce the alleged debt." *Id.* ¶ 6. They base their claims in part on conflicting versions of the note as presented to them on various occasions, asserting that they have been presented with copies of numerous versions that do not align. They allege that Defendants have engaged in tortious and even criminal conduct by their inadequate or knowing false attempts to prove standing to enforce the note and mortgage. They allege, "questionable practices [of] relying on conflicting documents and failing to take corrective action when notified." *Id.* ¶ 8. In essence, Plaintiffs contend that Defendants do not have what it takes to enforce the promissory note or foreclose on their

interest in the subject property, and as part of their Complaint they also allege that Defendants' representations and communications have violated various federal and state laws.

Plaintiffs press the following claims, by count: (1) fraudulent misrepresentation regarding the legitimacy of the promissory note and loan modification; (2) mail fraud and scheme to defraud based on bogus assertions of standing under different documents; (3) "contract fraud" arising from a misrepresentation that GDBT 1 Trust 2011-1 was an owner able to enter into the loan modification agreement in 2012; (4) breach of fiduciary duty; (5) unjust enrichment associated with post-loan-modification consideration paid by Plaintiffs; (6) "filing of false documents" at the Oxford County Registry of Deeds, presumably a specie of fraud; (7) violation of the Fair Debt Collections Practices Act; (8) violation of the Maine Unfair Trade Practices Act; (9) fraud on the court; (10) violations of the Racketeer Influenced and Corrupt Organizations Act; (11) fraudulent foreclosure action (in 2010-2012); and (12) bad faith conduct and deceptive practices, seemingly redundant to counts 7 and 8.

<u>Mortgage foreclosure standing primer</u>

"Title 14 M.R.S. § 6321, states that 'the mortgagee or any person claiming under the mortgagee' may seek foreclosure of mortgaged property." *Bank of Am., N.A. v. Greenleaf*, 96 A.3d 700, 704-705 (Me. 2014) (footnote omitted). In order to foreclose on a property pursuant to a note and mortgage, a party must demonstrate that it has the power to enforce the note and owns the mortgage or is seeking to foreclose on behalf of another who does. *Homeward Residential, Inc. v. Gregor*, 122 A.3d 947, 954 (Me. 2015).

10

"Because foreclosure regards two documents—a promissory note and a mortgage securing that note—standing to foreclose involves the plaintiff's interest in both the note and the mortgage." *Id.* at 705.

The enforceability of a promissory note, a type of negotiable instrument, is determined by Maine's Uniform Commercial Code (U.C.C.). *See Greenleaf*, 96 A.3d at 705; 11 M.R.S. §§ 3-1104(1), 3–1301. *Id.* An entity that has possession of a promissory note is entitled to enforce it as a "holder" of the note, if the note is indorsed in blank or "to the bearer," or if the note is indorsed to specifically designate the entity having possession as the designated payee. *Id.* & n.7. The inquiry into holder status may involve a chain of title when the note has changed hands repeatedly by means of special indorsements rather than indorsement in blank or to the bearer. 11 M.R.S. § 3-1201.

In some situations, an entity with possession may also be classified as having the rights of a holder even though the indorsement chain is deficient or defective. *Id.*; *F.D.I.C. v. Houde*, 90 F.3d 600, 605 (1st Cir. 1996). The key in such situations is whether or not the entity in possession received the note by a valid "transfer" from another party who, at the time of the transfer, was itself entitled to enforce the note. *Houde*, 90 F.3d at 605; *Wells Fargo Bank, N.A. v. Burek*, 81 A.3d 330, 335 (Me. 2013); 11 M.R.S. § 3-1203.

In addition to establishing the right to enforce the note, a party seeking to foreclose must also demonstrate its ownership of the mortgage or ownership in one on whose behalf the foreclosure action is commenced. Because a mortgage is a deed rather than a form of commercial paper, the standard for proving ownership of a mortgage does not follow the same rules as negotiable instruments. *Greenleaf*, 96 A.3d at 706. Ownership of a mortgage

11

is demonstrated by proof that one is the mortgagee or else owns the mortgage pursuant to assignment or a valid chain of assignments leading back to the original mortgagee. *Id.*

### Plaintiffs' standing-related allegations in greater detail

Plaintiffs challenge in part Defendants' entitlement to enforce the note. Their Complaint attaches as exhibits multiple iterations of the note received by them in various contexts, including the context of the 2010 foreclosure action. Plaintiffs allude to different notes by number, indicating thereby the changing indorsement pages. The very first note they provide as an exhibit, so-called "Note 1," reflects the promissory note Heidi Taitt issued to Taylor, Bean & Whitaker Mortgage Corporation ("TBW"), which bears on its final page an indorsement in blank by Erla Carter-Shaw, Executive Vice President. Such a note, indorsed in blank, would be enforceable by its possessor unless and until being specially indorsed by a holder. 11 M.R.S. § 3-1205(1)-(3).

In 2010, American Bank, allegedly based on its mere possession of the note, sought to foreclose in Maine District Court, asserting that it was "the current holder . . . by virtue of an endorsement . . . in blank." Compl. Ex. A. at PageID # 774, ¶ 8 (foreclosure complaint); *Id.* at PageID # 788 (interrogatory response 5). Despite this, at some point in the process of attempting foreclosure, American Bank allegedly produced another version of Heidi Taitt's note with a special indorsement from TBW to American Bank rather than the blank indorsement. Compl. Ex. B ("Note 2").

Plaintiffs go on to describe Notes 3 and 4, but a review of the exhibits indicates that these were not notes but rather assignments of the mortgage. Evidently, in April of 2009, before going out of business, TBW assigned the Taitts' mortgage to MCMCAP

Homeowners Advantage Trust IV.  Compl. Ex. F3, PageID # 852.  This assignment seemingly was made by Mortgage Electronic Registration Systems, Inc.,[3] Compl. Ex. K5, PageID # 987, and was followed by another assignment from MCMCAP to American Bank, *id*., PageID # 989.  During the 2010 foreclosure case, American Bank passed its interest in the mortgage to Goshen Mortgage, LLC, by assignment, and moved to substitute Goshen as the plaintiff in the foreclosure case.  *Id.*, PageID # 990; Compl. Ex. K6, PageID ## 1001, 1007.

Seemingly, it was around this 2010 timeframe that American Bank or counsel for the same sought to transform Heidi Taitt's note into one with a special indorsement to itself, *see* Compl. Ex. D, PageID # 808.[4]  Oddly, American Bank then indorsed the note in blank on an allonge.  *Id*., PageID # 809.

The American Bank/Goshen foreclosure action ended with a loan modification agreement.  Compl. Ex. L4.  According to the agreement, by the time of its execution, December 1, 2012, the mortgage was parked in a trust called GDBT I Trust 2011-1.  The loan modification agreement was executed by Heidi Taitt and by AMS Servicing on behalf of the GDBT I Trust.  *Id.*, PageID # 1104.  Plaintiffs claim that the note associated with the modification was not the same as the original note but rather "Note 4."  They assert, "The

---

[3] The MERS assignment may have been insufficient for foreclosure purposes.  *See Greenleaf*, 96 A.3d at 707.  The record may or may not divulge the answer to the question.  It appears that MERS may have had the status of a mere nominee for registration purposes rather than an owner in its own right.  See PageID # 991.

[4] Plaintiffs also dispute the ability of TBW to make a special assignment to American Bank circa 2010 because TBW was no longer a viable entity and Erla Carter-Shaw was no longer in its employ.  Compl. ¶ 46.

indorsements on Note 4 . . . remain the focal point of authenticity concerns, as it forms the basis for the alleged chain of title and for establishing standing to execute the alleged Loan Modification at that time." Compl. ¶ 29.[5]

The participation of GDBT I Trust in the loan modification agreement is a mystery in terms of the current record. It seems, from the Plaintiff's exhibits at least, that Goshen purported to pass along its interest in the mortgage to Christiana Trust, as trustee for a different trust, which then passed the mortgage on to Bayview Loan Servicing in 2015. Compl. Ex. K6, PageID ## 360-61. It is difficult to understand how they might have assigned these interests if the mortgage was parked in the GDBT I Trust, assuming it was not still parked with TBW based on a mere nominee transfer from MERS.

Notwithstanding the ostensible transfer of the mortgage to Bayview in 2015, there is a letter from Bayview to Heidi Taitt, dated December 30, 2014, stating that the Taitt "mortgage loan" was transferred to "U.S. Bank National Association, as trustee, in trust for the benefit of the Holders of WB4b Grantor Trust 2014-1," with Bayview to continue as loan servicer. Compl. Ex. K2, PageID # 961. Then, in October 2015, Bayview wrote Taitt to inform her that her "mortgage loan" was now with U.S. Bank National Association, as trustee, in trust for the benefit of the Holders of WLAB3b Grantor Trust 2015-1. *Id.*, PageID # 971. Then again, in September 2016, Bayview wrote to Heidi Taitt to inform her that her "mortgage loan" was now transferred to "U.S. Bank National Association, as

---

[5] Plaintiffs state that the modification agreement was of no effect or invalid. Compl. ¶¶ 53-59.

trustee, in trust for the benefit of the Holders of Bayview Opportunity Master Fund Ivb Grantor Trust 2016-RPL3."  Compl. Ex. K2, PageID # 964.

Beginning in 2017, Defendant Select Portfolio Servicing ("SPS") arrived on the scene, evidently as a servicer working for a U.S. Bank entity (more on that in the context of the Motion to Substitute).

There is a 2019 document of record suggesting that, in 2019, there was an assignment of mortgage from CIM Trust 2017-2 to U.S. Bank National Association, as Indenture Trustee, for the Holders of The CIM Trust 2017-2.  Compl. Ex. K3, PageID # 968.

As authority for its power to collect, SPS referenced the original note indorsed in blank by TBW.  Plaintiffs have resisted this authority in various communications based on the other copies of the note produced to them bearing different special indorsements and allonges.[6]  They maintain that Defendants should have taken "corrective action" rather than pressing on with their claim of authority to enforce the note.  Compl. ¶¶ 31-34.  What the appropriate corrective action might be is unclear.  Plaintiffs also complain that SPS then made matters worse by introducing, in November 2024, a "Note 7," bearing indorsements from TBW to American Bank, then from American Bank to Bayview, and then on to another Bayview entity, and then on to Chimera Funding, but without any indorsement to SPS or a U.S. Bank entity.

---

[6] Plaintiffs indicate that they sent SPS multiple "certified written requests" over the years.  Compl. ¶ 50. *See* 12 U.S.C. § 2605(e).

<u>Analysis</u>

Defendants move the Court to dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6) because it fails to state a claim upon which relief may be granted, because the claims are *res judicata*, because the statute of limitations precludes them, and based on the invalidity of Plaintiff's assignee-liability and third-party liability theories. Defendants primary assertion is that the 2012 loan modification agreement resolved all then-existing disputes over the enforceability of the note and mortgage and that, to the extent that is not the case, disputes over the legitimacy of those earlier dealings are barred by the six-year statute of limitations.

*1.     Preliminary assertions in the Motion to Dismiss*

Defendants begin their factual recitation with a laundry list of supposedly dispositive affidavits and documents of assignments recorded in the Oxford County Registry in the 2009-2010 timeframe. The documents are not of record. Not a good start, and even if some are, Defendants offer the Court no citation other than in a footnote reading: "RE-10-58 (South Paris District Court)." These documents, it is said, reveal the Plaintiffs' state of mind at that time (circa 2010 foreclosure). I can make nothing of it. This is simply not how one litigates a motion to dismiss.

Defendants next raise the modification agreement, which is of record. Compl. Ex. L4, PageID # 1099 (ECF No. 16-35).[7]  Through that Agreement, the Taitts[8] settled the

---

[7] The copy of the Agreement filed by Plaintiffs appears to be missing pages, and more particularly, paragraphs 7-10 of the Agreement.

[8] The Agreement of record shows a signature of Heidi Taitt but not Paul Taitt.

foreclosure claims and their own counterclaims in exchange for a $100,000 discount on the principal balance of the Note, outstanding interest, and other arrears; a fixed interest rate; and a new amortization schedule. Loan Modification Agreement ¶ 4. They assert that the release in that document, including a release of successors, prevents Plaintiffs current claims. The Agreement states, among other things:

> Release of Claims.  As consideration for the modification made herein, Borrower(s) . . .  hereby, jointly and severally, knowingly and voluntarily, release, discharge and covenant not to sue AMS, any servicer of the loan, any owner(s) of the Loan, and any of their predecessors, successors and shareholders from any and all claims, demands, liabilities, defenses, setoffs, counterclaims, actions and causes of action of whatever kind of nature, whether known or unknown, whether legal or equitable, related or connected in any manner to the Note or Deed of Trust/Mortgage, which the Borrower(s) have or may have through the date of this Agreement.

*Id.* ¶ 11. In short, the Agreement released claims and counterclaims bound up in the 2010 foreclosure dispute, including claims and counterclaims associated with the foreclosing party plaintiff's standing to enforce the note and mortgage when the modification agreement was signed.[9] However, the release, whether enforceable or not, does not forever resolve all questions concerning a particular entity's status as a valid holder of the note or owner of the mortgage. It only concerned controversies existing through the date of the Agreement.

---

[9] The Agreement defines the "Note" as "the original note and any riders, renewals, extensions, modifications, and loan adjustments thereof." *Id.* ¶ 3. It defines "Deed of Trust/Mortgage" as "the deed of trust or mortgage together with any riders, addendums, modifications, amendments, or adjustments thereto." *Id.*

2.    *Res judicata*

Defendants assert that "the Plaintiffs' 2024 Complaint is premised upon allegations that are, in substance, identical to those that they advanced in 2010 in response to the Foreclosure case." Defs.' Mot. Mem. at 3 (ECF No. 33-1).  I am not persuaded at present that *res judicata* is the proper defense given that the state court judgment, according to Defendants, merely "dismissed" all claims based on the settlement reflected in the loan modification agreement. *Id.* at 11.  Defendants offer no citation to support the proposition that "[a] [d]ismissal by [a]greement, particularly in the instant case wherein the previously raised claims were specifically waived, precludes further litigation of claims that were or should have been raised." *Id.*  Ultimately, because the record does not demonstrate that the state court's judgment of dismissal entered with prejudice, I do not at present find that the mere entry of a state court judgment dismissing the case determined the merits of any claim or resolved any factual issue essential to Plaintiffs' current claims.  Consequently, dismissal based on *res judicata* is denied, without prejudice to assertion of the defense at summary judgment.

3.    *Statute of limitation*

Defendants next raise the statute of limitation.  I agree with Defendants that a claim to invalidate the loan modification agreement is governed by Maine's general purpose, six-year limitation period.  14 M.R.S. § 752.  Plaintiffs argue in response that "Defendants cannot invoke any statute of limitations defense because their fraudulent conduct is ongoing and repeatedly reaffirmed through new deceptive actions." Mot. Strike at 3 (ECF

No. 34).  I also agree with Plaintiffs that claims associated with more recent mailings or communications are not wholly barred by the six-year limitation period.

As for Plaintiff's claim that the 2012 Loan Modification Agreement was invalid based on fraud, Plaintiffs argue that the statute of limitation does not apply because the Agreement "was predicated on a fraudulent copy of the note, and Note 2 from American Bank (2011) has now been conclusively proven to be legally impossible based on newly discovered evidence." *Id.*  While I disagree with Plaintiffs' assertion that any issues have been "conclusively proven" based on the pleadings alone, I find for purposes of the Motion to Dismiss that the allegation of fraud is sufficient to at least raise an issue as to the tolling of the statute of limitation, *see* 14 M.R.S. § 859, when it comes to the legitimacy of the 2012 agreement that ended the earlier foreclosure case.[10]  Although this may seem a strange result, we are addressing at present only pleadings, and the history of this dispute is so convoluted by the activity of mortgage aggregators that, frankly, almost anything is plausible.

I decline at this stage of the litigation to award Defendants a complete or partial dismissal based on the statute of limitation, without prejudice to assertion of the defense at summary judgment.

### 4.    *Arguments concerning alleged frauds*

Defendants challenge Plaintiffs' contention that they or American Bank before them ever falsely represented the existence of standing to enforce the note and mortgage.

---

[10] I also do not reach the issue of the contractual implications of the release since Defendants have only pressed for dismissal in relation to the doctrine of *res judicata*.

Defendants also assert that Plaintiffs are mistaken in their belief that no entity could ever enforce the note and mortgage against Plaintiffs, since ownership and/or possession of the note and mortgage can still be united in one entity for purposes of a foreclosure action.

Defendants are correct that a promissory note and mortgage do not need to follow the same path. The fact that an entity holds one but not the other does not mean that a sufficient interest in both cannot be acquired for purposes of mortgage enforcement. *See*, *e.g.*, *JPMorgan Chase Bank v. Harp*, 10 A.3d 718, 719–21 (Me. 2011); *see also Jordan v. Cheney*, 74 Me. 359, 361 (1883) ("One who takes a mortgagee's title holds it in trust for the owner of the [promissory note secured by the mortgage].").  In other words, to the extent Plaintiffs seek an order that would "clear their title" of the mortgage deed they issued, based on the "separation" of the note and mortgage, that is not a viable outcome of this litigation. Ordinarily, "nothing short of actual payment of the debt or an express release will discharge a mortgage." *St. Agatha Fed. Credit Union v. Ouellette*, 722 A.2d 858, 861 (Me. 1998).  None of the facts alleged in the Complaint states a plausible basis to infer that Plaintiffs have paid the note in full or that an entity in possession of their note ever discharged the debt.

Whether Plaintiffs can obtain a judicial decree concerning a particular entity's ability to foreclose, assuming that they allege facts that plausibly indicate that the entity in question has claimed entitlement to payment and/or threatened a foreclosure action without having first succeeded to the relevant interest(s) to collect and/or foreclose, is a different issue. Although the resolution of such a dispute feels like an advisory opinion, conceivably a controversy could be well stated in a case in which notes and mortgages have not only

been separated but have traveled paths as convoluted as those alleged in this case.  In any event, such a claim would have to arise in equity and be reserved for judicial determination, perhaps based on a concise chain-of-title hearing.  I do not presume to determine the question conclusively at this time.  I simply decline to dismiss the claim out of hand in the absence of an argument for that outcome that is supported by citation to relevant authority or, in the absence of precedent that is on point, by persuasive legal analysis.

As for fraud, Defendants appear to argue that they cannot be liable on such a theory if it is based on a nondisclosure, absent a special relationship that imposes a duty to disclose or active concealment of the truth.  Mot. Mem. at 14 (citing authority).  My understanding of the Complaint is that it is based on affirmative false representations rather than omissions.  To my reading, Plaintiffs complain that Defendants insist that they have standing to collect or pursue judicial remedies but in fact do not.  And for purposes of Rule 9, at least based on a preliminary review of the Complaint that is soon to be amended, the facts appear to be sufficient to inform Defendants of the communications in question, since they are based on letters sent to Plaintiffs concerning their mortgage debt.

### 5.  *Third-party or assignee liability theories*

Defendants argue that Plaintiffs cannot state a claim against them based on the actions of others, having in mind the original and substituted plaintiffs in the 2010 foreclosure case.  They are correct.  *Serra v. Quantum Servicing, Corp.*, 747 F.3d 37, 41 (1st Cir. 2014) ("The common law principle that the assignee stands in the assignor's shoes means only that the debtor can raise the same defenses against the assignee as he could

have raised against the assignor." (quoting *Ford Motor Credit Co. v. Morgan,* 536 N.E.2d 587, 591 (Mass. 1989)).

To the extent Plaintiffs maintain that Defendants are liable to them in damages for the conduct of others, Plaintiffs fail to state a claim. Counts 3 and 11 are dismissed and all counts seeking relief in the form of damages or fees will be limited to the conduct of the Defendants, not others.

### D.    Defendants' Motion to Substitute (ECF No. 47)

Although Plaintiffs named Defendant U.S. Bank National Association, Individually and as Trustee for CIM Trust 2020-R3, Global Structured Finance – CIM Trust 2020-R3, see Verified Compl. at 1 (ECF No. 1-1), U.S. Bank National Association now moves for the substitution of U.S. Bank Trust Company, National Association as Trustee, as Successor-in-Interest to U.S. Bank National Association, not in Its Individual Capacity but Solely as Indenture Trustee, for the Holders of the CIM Trust 2020-R3, Mortgage-Backed Notes Series 2020-R3. I will refer to the current defendant as USBNA and the proposed partial substitute as USBTC.

According to USBNA, it was "never an assignee of the subject mortgage," Mot. to Substitute ¶ 2, but rather, at the time the Complaint was filed, U.S. Bank National Association, not in Its Individual Capacity, but Solely as Indenture Trustee, for the Holders of the CIM Trust 2020-R3, Mortgaged Backed Notes, Series 2020-R3, was. Furthermore, USBNA advises that, on March 5, 2025, it assigned the mortgage from itself in its trustee capacity for that particularly worded Trust to USBTC, as a substitute trustee for that particular trust. *Id.* ¶¶ 3-4.

Plaintiffs do not merely oppose the Motion to Substitute but treat it as an outrageous development that somehow proves a fraud on the part of USBNA that warrants the imposition of sanctions.  Among other things, they contend that if USBNA was not the proper party from the inception of the case, then USBNA lacked standing to remove the case from the state court, even though Plaintiffs named USBNA as a defendant in their Complaint.  I have already denied the Motion for Sanctions because Plaintiffs' idea of what the implications are of the Motion to Substitute are fanciful and inaccurate.  USBNA was within its rights to remove the case because it was named as a defendant by Plaintiffs, as previously discussed.

Pursuant to Rule 25, "[i]f an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party." Fed. R. Civ. P. 25(c).  USBNA's Motion to Substitute is granted in part.  USBTC will be joined in this action as a party defendant alongside USBNA and Select Portfolio Servicing.  Plaintiffs are advised to include USBNA and USBTC as defendants in their anticipated, proposed amended complaint.

**E.    Plaintiffs' Motion for Judicial Notice (ECF No. 73)**

Through this peculiar Motion, "Plaintiffs respectfully request that the Court take Judicial Notice under Fed. R. Evid. 201(d) of . . . docket facts, for the limited purpose of preserving the integrity of the jurisdictional record and aiding in the resolution of the pending motions."  The Motion is DENIED.  As the Plaintiffs state, the docket preserves

the record.  Furthermore, for the reasons indicated in this Order, the "docket facts" do not aid in the resolution of the pending motions the way that Plaintiffs appear to believe.

## CONCLUSION

Plaintiffs' Motion for Leave to Amend (ECF No. 13) and Supplemental Motion to Amend Complaint (ECF No. 42) are DENIED WITHOUT PREJUDICE, meaning that the Court will permit Plaintiffs to file a new motion to amend along with a new proposed amended complaint that includes their post-motion supplemental facts and, if Plaintiffs desire, keeps the federal claims that they proposed dismissing in connection with their Motion to Remand.  Plaintiffs will file their Motion and Proposed Amended Complaint by August 1, 2025.

Plaintiffs' Motion to Remand (ECF No. 14) is DENIED.

Defendants' Motion to Dismiss (ECF No. 33) is GRANTED IN PART and DENIED IN PART.  Although the Complaint will be superseded by a new amended complaint, Counts 3 and 11 of the extant Complaint are DISMISSED and all counts seeking relief in the form of damages or fees will be limited to the conduct of the Defendants alone, not others.  Plaintiffs may continue to allege facts concerning the acts of third parties who claimed to be in the chain of possession or title of either the note or mortgage, as they see fit to describe the background of this controversy.  The partial denial of the Motion to Dismiss is without prejudice, meaning that Defendants are at liberty to challenge Plaintiffs' anticipated motion for leave to amend.

Plaintiffs' Motion to Strike (ECF No. 34) and Supplemental Motion to Strike (ECF No. 45) are DENIED.

Defendants' Motion to Substitute (ECF No. 47) is GRANTED IN PART and DENIED IN PART.  USBTC will join this case as a party defendant.  USBNA will also continue to be a party defendant, both individually and as a former trustee for the identified trusts.

Plaintiffs' Motion for Sanctions (ECF No. 51) is DENIED.

Plaintiffs' Motion for Judicial Notice (ECF No. 73) is DENIED.

SO ORDERED.

Dated this 21st day of July, 2025.

/s/ Lance E. Walker
Chief U.S. District Judge